## Case No. 2,918.

### COATES v. MUSE et al.

[1 Brock. 551.] [1]

Circuit Court, D. Virginia. Nov. Term, 1823.

LIABILITY OF EXECUTOR — PRIORITY OF DEBT OF DECEDENT—EQUITABLE TRANSFER OF DECREE.

1. There having been a joint decree in 1811, against E. M. and T. M., administrators of H. M., and one of the said administrators, T. M., having died, the survivor, E. M., was appointed his executor. To secure to the plaintiff in the decree the payment thereof, the surviving administrator, E. M., executed in 1813, a deed of trust, or mortgage, on a tract of land, which deed the attorney of the plaintiff accepted, and acknowledged under his hand, that the said E. M. was entitled to the benefit of the decree. The said deed, though held by the plaintiff's attorney, was never recorded, nor enforced by him. but on the contrary, the said E. M. sold the land, and he then died. On the books of E. M., as executor of T. M., were found two entries, by which he gave credit to himself, as such executor, for T. M.'s proportion of that decree. which entries amount to an admission, that the estate was no further liable, and that he, E. M., should pay the residue of the decree. *Held*: That as E. M. sold the land, and did

¹ [Reported by John W. Brockenbrough, Esq.]

not account for the proceeds, he became liable to the plaintiff in the same sum, as if the transaction had never taken place.

2. As to the liability of the estate of T. M. to the plaintiff. A decree, though not assignable at law, is yet transferable for valuable consideration, and a court of equity will support the transfer. If, therefore, the estate of T. M. had been represented by any other person than E. M., and such representative had, without knowledge of the fraudulent sale of the land. paid to E. M., the transferee of the decree, his proportion of the decree, the court would have sustained the payment: but as no money was really paid to the creditor, by the representative of T. M., and as E. M., who committed the fraud. was the executor of T. M., the creditor ought not (notwithstanding the entry of the credit aforesaid), to lose his recourse against the estate of T. M. But, as it was ascertained by the report of a commissioner. that E. M., as executor of T. M., was indebted to the estate of the latter, in the full sum claimed by the plaintiff, from the estate of T. M.. and as the debt so due from the estate of E. M., to that of T. M., is one of the first dignity, under the act of assembly, the plaintiff should stand in the place of T. M.'s representative, and be considered as a creditor of the highest dignity. and obtain a decree directly against the representative of E. M., for the full amount due from that estate, to T. M.'s estate.

3. As to the balance (over and above the aforesaid sum due to T. M.'s estate) of the decree of 1811, now to be decreed against the representative of E. M. The effect of the agreement between the attorney of the plaintiff, (with the concurrence of his agent, or attorney in fact,) was to transfer the decree to E. M., and to put the mortgage as a substitute for the decree. The plaintiff could not, thereafter, proceed against either E. M., or T. M., on the decree, but on the mortgage alone. The debt, therefore, lost its dignity. and became as between the creditor, and representatives of E. M., a debt by specialty alone, and is to be postponed, in decreeing against those representatives, to other debts of greater *dignity* than specialties.

MARSHALL, Circuit Justice. On the 4th day of June, 1821, the court considering a bill filed in January, 1821, as being both a bill enjoining the decree rendered at the November term, 1820, and a petition for a rehearing, opened the decree rendered in November, 1820, and referred the accounts to the commissioner for a resettlement, with instructions to settle. also, the administration of the estate of Thomas Muse, by Elliott Muse. [Case No. 2,916.] In December, 1821, the commissioner made his report, which was taken up a few days thereafter, and a decree pronounced, directing Z. U. Crittenden, administrator. &c., of Elliott Muse, deceased, out of the assets of his testator. in his hands to be administered, to pay the plaintiff the sum of $3731.32, with interest on $3171.42, from the 20th of November, 1821, till paid; and the court reserved, to a future day, its decision on the ultimate responsibility of the parties. [Id. 2,917.] In May term, 1822, the said defendant, Z. U. Crittenden, administrator, &c., produced two records of suits, pending against him as administrator, in the state court, in Williamsburg, on claims of the highest dignity, and prayed, that the inter-

locutory decree of the preceding term, might be set aside. The court overruled this motion, and directed that decree to be satisfied out of the private estate of the said Crittenden, if assets of his intestate could not be found. The cause comes on again to be heard on all the papers, and it is contended by the defendant, Crittenden, administrator, &c., of Elliott Muse, that the original decree, pronounced, in 1811, against Elliott Muse and Thomas Muse, administrators of Hudson Muse, has lost its dignity, as against the representatives of those defendants, in consequence of a receipt and agreement, in these words: "Elliott Muse, Esq., has adjusted with me, by securing the same to be paid, the amount of the decree against the administrators of Hudson Muse, deceased, and is entitled to the benefit of the decree, as to that part of the debt, but not as to the house and lot in Urbanna, which is the fund for payment of the residue of the plaintiff's demand. Wm. C. Williams, Attorney for Plaintiff. 18th March, 1813." It was admitted before the commissioner, by the agent for the plaintiff. that a deed of trust or mortgage was, about this time, executed by the said Elliott Muse, to secure the payment of the decree, but that the said deed was held by the plaintiff's attorney, was never recorded or enforced; and it is admitted by Z. U. Crittenden, that Elliott Muse afterwards sold the land.

The principle on which the decree of November, 1820, was opened in May term, 1821, was that the decree of May, 1811, ought to be apportioned equally on the estates of Elliott and Thomas Muse, unless the representatives of one of those estates, could show that the other ought to be charged with more than a moiety of that decree. That principle is still believed to be correct. The accounts, as now exhibited to the court, furnish no evidence on this subject, other than two entries on the books of Elliott Muse, as executor of Thomas Muse, in which he credits himself as follows: "1813, March 9th, to cash in discharge of testator's proportion of decree, Coates's Executrix v. Muse's Administrators, including interest and costs of suit, $2411.54½. June 19th, to amount of your proportion of a balance not charged in a former account of a decree in fed. ct. Muse's Administrator v. Coates's Executors, $1602.90."

The respective liabilities of Elliott and Thomas Muse, having been known only to themselves, this is the only testimony now attainable on this point. The entries of Elliott Muse cannot increase the liability of Thomas Muse, but may diminish .it. If, therefore, these two sums which were obviously intended to comprise Thomas Muse's part of the decree be less than a moiety of the decree with interest and costs, these entries amount to an admission on the part of Elliott Muse, that the estate of Thomas

Muse was not liable farther, and that he ought himself to pay the residue. This conclusion is rendered irresistible, by the circumstance, that at the date of the last entry, Elliott Muse considered the whole decree as being transferred to him by the paper of the 18th of March, 1813, executed by the attorney of the plaintiff, and of course, charged the estate of his testator with the whole sum for which it was liable on the decree. The deed of trust, which is supposed to be referred to in this paper of the 18th of March, 1813, is prepared in blank in one handwriting. and afterwards filled up in another. It is dated the 18th of March, 1811, three months before the decree was rendered, and is filled up to John Gray, agent for the plaintiff. It was, obviously from the expressions of the deed, filled up in the year 1813, before the 3d of June, and was probably filled up and executed on the 18th of March, 1813, when the receipt or assignment was executed. This deed having never been recorded, and Elliott Muse having sold the land, and received the money, for which he has never accounted, it is obvious, that he must remain liable to the plaintiff in the same sum as if this transaction had never taken place. Were Elliott Muse alive and solvent, there could be no difficulty in decreeing him to pay the whole sum. But he is dead insolvent, and the whole difficulty of the case consists in determining, how far the representative of Elliott Muse is chargeable with a devastavit for having paid debts of inferior dignity to the decree of the 3d of June, 1811. A decree is not, in law, assignable, but is like any other chose in action, transferable for a valuable consideration, and a court of equity will support the transfer. If, therefore, the estate of Thomas Muse, had been represented by any other than Elliott Muse, and such representative had, without knowledge of the fraud, paid his part of the decree to Elliott Muse, this court would unquestionably have sustained the payment. But as no money was really paid by the estate of Thomas Muse, nor any injury sustained by his estate. in consequence of this credit in his account by Elliott Muse; as the person committing the fraud was the representative of Thomas Muse, it seems unreasonable to deprive the creditor of his recourse against Thomas Muse, for so much as was equitably due from his estate. Had Elliott Muse never made this entry in his accounts, it would be admitted, that the liability of Thomas Muse remained; and I cannot think, that this entry changes his liability, unless it should appear that he has sustained an injury from it. The question of dignity is unimportant in this part of the case, because the estate of Thomas Muse is solvent. In a suit instituted in a court of chancery for the state, an account was taken of the administration of Elliott Muse, of the

estate of Thomas Muse, and the balance reported against the executor, is $314.54¾. But this report is understood to credit the executor for the sum charged, as being paid to the executor of Coates. Those sums are, therefore, to be added to this balance, and they will leave Elliott Muse indebted to the estate of Thomas Muse, in the full sum now claimed by the plaintiff from the estate of Thomas Muse. This debt, from the representative of Elliott Muse, to the estate of Thomas Muse, is, undeniably, a debt of the first dignity.

It is contended on the part of the representative of Thomas Muse, that as all the parties are before the court, the representative of Elliott Muse, ought to be decreed to pay to the plaintiff, the sum due from the estate of Thomas Muse: and the court is of that opinion. The plaintiff, therefore, is in the place of a representative of Thomas Muse, as to that part of the decree, and is in virtue of the rights of that representative, a creditor of the highest dignity. Z. U. Crittenden, the administrator of Elliott Muse, deceased, will, therefore be directed to pay to the plaintiff, the sum of $——, that being the sum the plaintiff has a right to demand from the estate of Thomas Muse, and which is due to that estate, from the representative of Elliott Muse. The decree which ought to be pronounced against Z. U. Crittenden, the administrator of Elliott Muse, deceased, for the residue of the decree of the 3d of June, 1811, remains to be considered. It is contended by the plaintiff, that the whole transaction between William C. Williams, the attorney for the plaintiff, and Elliott Muse, on the 18th of March, 1813, ought to be considered as a nullity, in consequence of the fraud committed by Elliott Muse, in selling the mortgaged property, and converting the money to his own use. I cannot concur in this opinion. There is certainly no positive evidence of the concurrence of the plaintiff's agent, in the arrangement of the 18th of March, 1813, but when it is recollected, that the name of the agent is introduced into the deed of mortgage, that the agent himself, states the deed to have been executed, about the time the paper of the 18th of March was signed, that there must have been a free course of communication between the attorney at law, and the agent, I must conclude, that the agreement of the 18th of March, was made with the knowledge and consent of the agent. The effect of that agreement was, to take the deed of mortgage in satisfaction of the decree, and to transfer the decree itself, so far as relates to the question now before the court, to Elliott Muse. The motives for making this arrangement were, at the time, satisfactory to both parties, and the court has no right to suppose they were inadequate. The contract was, then, at the time, a fair and valid contract, the obligation of which, neither could controvert. Had an attempt been made, immediately to enforce the decree of 1811, the court would not have enforced it; and if the plaintiff could have proceeded without the aid of the court, she would have been enjoined. Had the deed been recorded, or had Elliott Muse abstained from selling the property, the plaintiff could never, in the face of the agreement of March, 1813, have proceeded on the original decree. She could only have proceeded on the mortgage. Had the mortgaged property been insufficient to satisfy the decree, the plaintiff could not have proceeded against Elliott or Thomas Muse, or their representatives, for the sum remaining unsatisfied. The neglect of the plaintiff to record her mortgage, and the fraud of Elliott Muse, in selling the property, and misapplying the money, leave Elliott Muse responsible on the deed of mortgage, but not on the original decree. The debt, therefore, is a debt by specialty only; and as the suits instituted in the state court, are for debts of higher dignity, than a debt by specialty, the claim of the plaintiff, for the debt due from Elliott Muse must be postponed, to the claims of some of the plaintiffs in the state court. The decree of the third of June, 1811, comprehended the sum of £429. 9s., equal to $1431.50, not then collected, but in suit. This sum was considered as assets in hand, because the parties expressed a confidence, that it would be collected, and because the counsel for the plaintiff assured the court, of an arrangement being made, by which the decree would not be enforced, till this money should be received. Under these representations, the court gave, improperly, a decree for the whole sum, as if the assets had been in the hands of the administrators. If this money has not been collected; and if the failure to collect it, arises from no default of the administrators—if due diligence has been used, this error in the decree of 1811, ought not to prejudice them, but ought now to be corrected.

Final Decree: This cause came on to be further heard, on the papers formerly read, and two abstracts of records filed by the defendants, and marked, respectively, Z. and Y., and was argued by counsel: on consideration whereof, the court confirming the report of Commissioner Barton, of the administration of the defendant, Robert Blakely, on the estate of Thomas Muse, and the first statement of the said commissioner, of the administration of the defendant, Z. U. Crittenden, on the estate of Elliott Muse, and being of opinion: 1st. That the outstanding claims, amounting to £429. 9s., which were considered in rendering the decree of the 3d of June, 1811, as part of the assets of Hudson Muse's estate, in the hands of his administrators, were not assets, as they had not been reduced to possession, and that they ought not to be considered assets, chargeable to the defendants, or their intestates, because they have not been collected, and the failure to collect them

is not imputable to culpable neglect, and, therefore, that the amount of those claims ought to be deducted from the said decree of 3d of June, 1811, and that the plaintiff is entitled to an assignment, without recourse, from the administrator of Elliott Muse, of the said claims. 2dly. That the estate of Thomas Muse, is still responsible to the plaintiff, for that part of said decree of the 3d of June, 1811, that ought to have been paid by the said Thomas Muse, but that the estate of Thomas Muse is not responsible for more than the two sums of $2411.54, of the 13th of March, 1813, and $1602, of the 19th of June, 1813, charged to that estate, by Elliott Muse, in his account of his administration, on the estate of Thomas Muse, as the proportion of the said decree, payable by that decree. 3dly. That as it manifestly appears, that the estate of Elliott Muse, is, on account of his administration of the estate of Thomas Muse, indebted to that estate in a larger sum than is chargeable on Thomas Muse's estate, for the proportion of the plaintiff's claim, payable by Thomas Muse; and the responsibility of Elliott Muse's, to Thomas Muse's estate, being a debt of the first dignity, the estate of Elliott Muse should, as far as the assets extend, be, in the first instance, subjected to the payment of the plaintiff's claim, to the exoneration of the estate of Thomas Muse. And it appearing by a statement made, from the papers in the case, (which statement is marked "statement for final decree," and is received as a statement made by a commissioner,) that the balance due the plaintiff, after deducting the said claims of £429. 9s., and subsequent payment is $4735.32, with interest from 20th November, 1821, till paid; that the responsibility of the estate of Thomas Muse, for the said two sums of $2411.54, and $1602, in 1813, exceed the said balance due the plaintiff; that the amount of assets, for which the administrator of Elliott Muse is chargeable, is $3608.35 with interest on $3218.36, from 20th November, 1821: The court doth adjudge, order, and decree, that the defendant, Z. U. Crittenden, administrator, do, out of the assets of his intestate, &c., if so much thereof he hath, and if not, out of his own proper goods and chattels, pay to the plaintiff, $3608.35 with interest, on $3218.36, from 20th November, 1821, till paid, and one moiety of the costs of this suit: that the defendant, Robert Blakey, administrator of Thomas Muse, do out of the assets of his intestate in his hands, &c., if not, then out of his own proper goods and chattels, pay to the plaintiff, the sum of $1126.97 with interest, from 20th November, 1821, till paid, and the other moiety of the costs. And the court doth further order, &c., that Z. U. Crittenden, administrator of Elliott Muse, survivor of Thomas and Elliott Muse, administrator, with will annexed, of Hudson Muse, do assign to the plaintiff, or her duly authorized attorney, the said claims,

evidenced by the said abstracts of records, marked Z and Y; but the assets to be without recourse against Crittenden. And liberty is reserved to the plaintiff, to apply to the court for a further decree against the administrator of Thomas Muse, for so much of the amount hereby decreed to be paid by the administrator of Elliott Muse, as the plaintiff may fail to obtain on that decree, from that administrator, or those responsible for his due administration of the assets of his intestate.